creek should break up and a freshet occur, the aqueduct would form a complete dam and serious results would follow. He concluded that March 1st was early enough to cut the ice and made no attempt to remove it. On the 13th of February it began to rain. The ice in the stream broke up. The aqueduct dammed the water and ice back over the claimant's bridge, and when the pressure became sufficient the ice in the arches gave way, and the bridge was carried down the stream.

By a divided court the Court of Claims dismissed the plaintiff's claim, and from the judgment entered thereon the plaintiff appeals.

[1, 2] The state was responsible for the negligence of its superintendent, and we are of opinion that the proof showed such neglect on his part as entitled the plaintiff to recover the damages which it sustained.

It was perfectly apparent that a flood would occur if the ice in the creek broke up, as there were indications of its doing, while the ice remained in the arches of the aqueduct. There had been a partial breaking up of the ice in the stream, and an ice gorge had formed only a short distance above, and residents of the vicinity were so apprehensive that they took pains to notify the superintendent of the situation. He chose to be governed by time rather than circumstances.

It is urged that it usually took from ten days to two weeks to cut away the ice between all the arches. The superintendent could have tried to do what the time permitted. It was testified that the opening of one of the arches would have relieved the situation and prevented the water arising as high as the bridge which was carried away. At least one arch could have been partially cleared, and the water flowing through it would have worn away the remaining ice.

Nor was the flow so unusual as to relieve the state from liability. It had placed an artificial structure across the stream which obstructed the flow of water. Freshets were to be expected. The one which did the damage came earlier than usual, but the superintendent was warned of the situation and chose to do nothing. Had there been no notice to him, a different question might have been presented. The permitting of the obstruction to the flow of water to remain after notice was the proximate cause of the injury.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.

---

CHADWICK v. PRESS PUB. CO.

(Supreme Court, Appellate Division, Second Department.   January 12, 1912.)

1. MASTER AND SERVANT (§ 80*)—CONTRACT OF EMPLOYMENT—ACTIONS—BURDEN OF PROOF.

Where, in an action against a publisher for the price of certain articles written for publication, plaintiff claimed that the contract provided for payment of $35 for each article, while defendant claimed that the rate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was $25, the burden was not on defendant to establish that the arrange-ment contemplated a payment of only $25.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 115: Dec. Dig. § 80.*]

2. APPEAL AND ERROR (§ 662*)—RECORD—CONCLUSIVENESS.

The form of a charge objected to as stated in the record, and not the form stated in appellant's brief, is conclusive on the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2850–2852; Dec. Dig. § 662.*]

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by Charles Chadwick against the Press Publishing Company. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

E. C. Crowley, for appellant.

Arthur Watson, for respondent.

PER CURIAM. [1] It was incumbent upon the plaintiff to establish that his work was done under a contract with the defendant that provided for a payment of $35 for each article. The burden was not upon the defendant to establish that the arrangement between the parties contemplated a payment of but $25 therefor. Rose v. Wells, 36 App. Div. 593, 55 N. Y. Supp. 874. We think that the preponderance of evidence upon that issue is against the plaintiff, not only in view of the testimony of the defendant's witnesses, but also upon consideration of the plaintiff's testimony, which indicates performance at the rate of $25 with the hope, but not upon the reliance, that the larger sum would ultimately be paid. His testimony also tends to indicate a waiver of the agreement which he testifies he made originally with McLaughlin.

[2] The exception which is made the subject of point 5 of appellant's brief was well taken, and would be fatal if the quotation therein from the charge was exact; but in the record, which is binding upon us, the word "must," quoted by the learned counsel for the appellant, appears as "may." There is not the slightest idea of imputing to counsel an intentional misquotation, for there is no ground for it whatever; quite the contrary.

We do not decide that the case presented was not for the jury, but from dissatisfaction with the verdict upon this record we reverse the judgment and order, and order a new trial; costs to abide the event.

JENKS, P. J., and CARR and WOODWARD, JJ., concur. THOMAS, J., concurs in result. BURR, J., votes to reverse for errors in the charge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes